**STEERE TANK LINES, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.**

Nos. 81–4300, 81–4508, 81–4519, 82–4035,
82–4190, 82–4236, 82–4254, 82–4323
and 82–4262.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1984.

Hugh T. Matthews, Dallas, Tex., for petitioner.

H. Glenn Scammel, Richard J. Osterman, Jr., Edward J. O'Meara, Colleen J. Bombardier, I.C.C., William French Smith, Atty. Gen., Robert B. Nicholson, Nancy C. Garrison, Marion L. Jetton, Edward T. Hand, John J. Powers, III, Margaret G. Halpern, Neil R. Ellis, Mark Del Bianco, Dept. of Justice, Washington, D.C., for respondents.

Kenneth R. Hoffman, Austin, Tex., for intervenor Highway Pipeline Trucking Co.

Earl Check, Henry L. Fabritz, Des Moines, Iowa, for intervenor Arizona Tank Lines, Inc.

William J. Lippman, Denver, Colo., for Calzona Transp. Inc.

A. Michael Bernstein, Phoenix, Ariz., for intervenor CTI.

Jerry Prestridge, Austin, Tex., for intervenor Mission Petroleum Carriers, Inc.

Before GOLDBERG, GEE and TATE, Circuit Judges.

GEE, Circuit Judge:

Steere Tank Lines, Inc. ("Steere") asks this Court to review and set aside nine separate Interstate Commerce Commission ("ICC") decisions involving motor carrier licensing applications. In each decision the ICC issued a Certificate of Public Convenience and Necessity ("CCN") to each applicant, thereby granting permission to the applicant carrier to transport various commodities by truck within specified geographic areas. Steere protested each of the nine applications before the ICC and filed these appeals with this Court after receiving adverse decisions from the Commission. After reviewing the decisions and the evidence presented in each case, we affirm all nine decisions of the ICC.[1]

I. *The Motor Carrier Act*

■ The ICC regulates only a portion of this country's motor carrier business. That portion includes common carriers and contract carriers.[2] The nine cases here on appeal all involve common carriers. For a

---

1. This Court consolidated six of these cases *sua sponte* and two more at the request of Steere. One additional case, No. 82–4262, appealed separately, presents the same issues and was ordered consolidated for oral argument. This opinion is dispositive of all nine cases.

2. 49 U.S.C. § 10102(13), (14) (Supp. V 1981) provides:
   (13) "motor common carrier" means a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both.
   (14) "motor contract carrier" means—
   (A) a person, other than a motor common carrier, providing motor vehicle transportation of passengers for compensation under continuing agreements with a person or a limited number of persons—
   (i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or
   (ii) designed to meet the distinct needs of each such person; and
   (B) a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—
   (i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or
   (ii) designed to meet the distinct needs of each such person.

particular trucker to obtain permission to haul goods over additional routes or to carry kinds of freight which it is not presently authorized by the Commission to carry, the motor carrier must petition the ICC for a CCN. Under the Motor Carrier Act of 1980, the petitioner must show the ICC two things to make out a *prima facie* case: (1) that it is "fit, willing and able" to perform the proposed services, and (2) that the service proposed will serve a useful public purpose, responsive to a public demand or need. 49 U.S.C. § 10922(b)(1) (Supp. V 1981);[3] *Steere Tank Lines v. ICC,* 687 F.2d 104, 105 (5th Cir.1982) (*Steere II*); *J.H. Rose Truck Line, Inc. v. ICC,* 683 F.2d 943, 950 (5th Cir.1982). Any trucking firms opposing the petitioner's proposed new authority may file formal protests with the Commission. Once the petitioner makes out its *prima facie* case, however, a presumption is created that the new authority will be consistent with the public convenience and necessity and the burden of proof is shifted to the protestants to show

that it will not. *Steere Tank Lines, Inc. v. ICC,* 714 F.2d 1300, 1303 (5th Cir.1983) (*Steere V*); *C & H Transportation Co., Inc. v. ICC,* 704 F.2d 834, 842 (5th Cir.1983); *J.H. Rose Truck Line,* 683 F.2d at 950. If the protestants fail to convince the Commission that the proposed new service is inconsistent with the public convenience and necessity, the new authority will be granted in the form of a CCN. *Steere V,* 714 F.2d at 1304. Any party dissatisfied with the ICC's initial decision may file an appeal within the administrative agency and may seek judicial review in the United States Courts of Appeals after the appeal before the Commission has been exhausted. 28 U.S.C. §§ 2321, 2342 (1976).

Steere filed protests to all nine of the petitions involved here and exhausted its administrative remedies.[4] On appeal to this Court, Steere does not argue that any applicant failed to make its *prima facie* case. Rather, it contends that it rebutted each case by showing inconsistency with the pub-

---

3. 49 U.S.C. § 10922(b) (Supp. V 1981) provides, in pertinent part:

> (b)(1) Except as provided in this section, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title as a motor common carrier of property if the Commission finds—
>
>> (A) that the person is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and
>>
>> (B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need;
>
> unless the Commission finds, on the basis of evidence presented by persons objecting to the issuance of a certificate, that the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity.
>
> (2) In making a finding under paragraph (1) of this subsection, *the Commission shall consider and, to the extent applicable, make findings on at least the following:*
>
>> (A) *the transportation policy of section 10101(a) of this title;* and
>>
>> (B) *the effect of issuance of the certificate on existing carriers, except that the Com-*

*mission shall not find diversion of revenue or traffic from an existing carrier to be in and of itself inconsistent with the public convenience and necessity.*

(emphasis added).

4. We briefly summarize the evidence in each case and the Commission's decisions:

1. No. 81–4300, Arizona Tank Lines

Arizona Tank Lines, a bulk commodities carrier with existing operations in a seven-state area, sought authority to transport general commodities radially between points in those seven western states plus other points in the United States. The carrier sought to broaden its operations to provide better service. Five shippers supported Arizona's application by expressing a need for increased service and stating the precise number of shipments they anticipated tendering to Arizona.

Steere and 14 other trucking companies protested the application, stating that traffic would be diverted from their operations to Arizona. The ICC granted the CCN with modifications, stating that traffic diversion would not be very significant because Arizona would be taking shipments away from rail and private carriers. Appeals were filed by Steere and Arizona, but the Commission affirmed the earlier findings.

Steere filed for judicial review of the decision. Later, Steere filed a petition for discretionary review, alleging for the first time the ruinous impact on its operations from multiple CCN's granted for service in the Texas and New Mexico markets. The ICC did not act on the petition.

2. No. 81–4508, Calzona Transportation, Inc.

Calzona sought to expand its authority to transport commodities in bulk between points in nine western states. Eleven shippers supported Calzona's application, expressing a need for Calzona's expanded service and stating the amount of new business to be given Calzona.

Steere opposed the application, alleging future diversion of traffic, terminal closings and employee layoffs. The ICC granted the application, stating that the new service would only compliment Calzona's existing service in the area. The Commission found that Steere had presented no real evidence of substantial harm to its overall operations that would be contrary to the public interest.

Steere appealed but the Commission refused to consider the appeal because it did not address any specific errors in the decision and it was identical to appeals filed by Steere in other proceedings. The petitioner filed for judicial review.

3. No. 81–4519, CTI

CTI requested permission to transport commodities in bulk between points in seven western states to supplement its existing operations. Four shippers supported CTI's application, expressing a need for CTI's special equipment and ability to render complete services. The shippers specifically listed the routes for which service was needed and stated that none were customers of Steere.

Two carriers protested CTI's application. Steere's arguments of harm to it because it could compete for any traffic diverted were rejected. Both protestants filed unsuccessful administrative appeals. Steere then filed its appeal to this Court.

4. No. 82–4035, Highway Pipeline Trucking Co.

Highway sought authority to transport petroleum, natural gas and related products between points in 28 states. The nine shippers supporting the application expressed a need for Highway's specialized equipment and emphasized their dissatisfaction with existing service.

Steere and one other carrier protested the request for authority. Their arguments of substantial harm to their operations were rejected because they could not satisfy the Commission that they had been active in serving the nine shippers or that the requested service could be provided by the protestants. Steere filed an administrative appeal from the ICC's adverse decision and requested consolidation of this case with others so that the cumulative effect of multiple grants of operating authority upon the motor carrier industry could be considered by the Commission. Consolidation was denied and Steere filed this appeal.

5. No. 82–4190, Mission Petroleum Carriers, Inc.

Mission requested permission to transport commodities in bulk over irregular routes between points in eight western states and other points in the United States.

Eleven prospective customers supported Mission's application. Some of these shippers were unhappy with existing rail and motor carrier service and expected that Mission's additional equipment would help ease the situation. Steere and two other carriers protested the application. Steere also filed a petition to reopen the proceedings and consolidate it with other proceedings in order to consider the cumulative effect of multiple grants of authority upon the trucking industry. The initial decision was affirmed but the case was later reopened because the Commission had failed to consider Steere's protest. The ICC concluded that Steere had not alleged possible adverse effects upon itself sufficient to harm the public. Steere filed an administrative appeal and the decision was affirmed with modifications.

6. No. 82–4236, Arizona Tank Lines

Arizona requested a CCN to transport general commodities between points in seven western states and other points in the United States. Five shippers in support of the application listed the routes over which they wished to obtain trucking services and the amount of traffic they expected to tender to Arizona.

Opponents of the application included Steere and eight other carriers. Steere requested the Commission to consider the cumulative effect of multiple grants of authority upon its operations by consolidating this case with others.

Because the ICC believed that Arizona had not demonstrated a need to transport all the commodities for which it applied over all routes it requested, the application was granted only in part. The Commission acknowledged that some diversion of traffic from the protestants would result from the new CCN, but concluded that the protestants had not met their burden of showing how the new grant would materially affect their overall operations or cause harm to the public. Steere's request for consolidation was denied because the various cases were at different procedural stages and the ICC believed that each case must be decided upon its individual record.

Arizona and Steere filed administrative appeals to which the protestants replied. The ICC then granted Arizona's original request almost in full. The protestants' arguments concerning harmful diversion of traffic were found to be unpersuasive because Arizona's competition would not damage the protestants enough to deprive the public of essential services. Steere then appealed to this Court.

7. No. 82–4254, Feed Transports, Inc.

Feed sought authority to transport commodities in bulk between points in 15 states. Feed is an established carrier specializing in hauling animal feed, liquid fertilizer and fertilizer solutions. Six shippers supported Feed's request. They stated a need for additional service be-

lic convenience and necessity so that the CCNs should not have been issued. Steere maintains that the ICC was required to analyze the relevant motor carrier market, assess the cumulative effect on Steere's operations of a series of grants of authority, and, if it concluded that the multiple grants were consistent with the national transportation policy, 49 U.S.C. § 10101 (Supp. V 1981), explain why.

The petitioner contends that the ICC's action was arbitrary and capricious because it applied an inappropriate standard in determining that the applicants' new trucking services would not be inconsistent with the public convenience and necessity and because it declined to make findings on the cumulative effect of the new services on the market. In arguing that the ICC's method of evaluating any protestant's proof of inconsistency with the public convenience and necessity violates the national transportation policy, Steere insists that under current Commission policy it is impossible for a protestant to demonstrate that inconsisten-

cy. Steere points to the absence of any decision in any case within the past two years in which an applicant established its *prima facie* case pursuant to 49 U.S.C. § 10922(b)(1) (Supp. V 1981) but was denied a CCN due to proof by a protestant of inconsistency with the public convenience and necessity. Thus, we are asked to decide whether the ICC's decisions considered as a whole are consistent with Congressional intent in passing the Motor Carrier Act of 1980, and, if so, whether the ICC's decisions here on appeal are supported by substantial evidence.

## II. *Congressional Intent: The National Transportation Policy*

In interpreting the Motor Carrier Act of 1980, the starting point is the language of the statute itself. *American Trucking Associations, Inc. v. ICC,* 659 F.2d 452, 459 (5th Cir.1981). If the wording of the statute is clear, there is no need to look further. *Id.*[5] A court should not depart from the official text of a statute by con-

---

cause existing carriers had insufficient equipment to serve them. The shippers listed representative routes and the number of shipments to be given to Feed.

Seven carriers filed protests, including Steere, which wished the ICC to consider the cumulative effect of multiple new grants of authority upon its operations. The Commission found sufficient traffic to support a new grant of authority to Feed and the protestants' existing operations. Steere filed an unsuccessful administrative appeal and now seeks judicial review.

8. No. 82–4323, Bacon Transport Company

Bacon filed an application, which was supported by 18 shippers, to transport commodities in bulk between points in 15 states. The shippers complained of a lack of qualified drivers, inadequate cleaning facilities, the lack of authority of existing truckers, and insufficient equipment available to serve their broad geographical requirements.

Three carriers filed protests, Steere among them, but the Commission found that the protestants had not demonstrated that the new grant would be inconsistent with public convenience and necessity. The ICC further found that the protesting carriers had not shown how the public would suffer from the effects of the ruinous competition alleged by Steere from the new CCN. Steere lost its subsequent administrative appeal and now seeks relief from the Court.

9. No. 82–4262, Chemical Express Carriers, Inc.

Chemical's application requested authority to transport commodities in bulk between numerous points in the United States. Seventeen shippers of a wide range of bulk commodities supported the application. Steere and seven other trucking firms opposed the request. The shippers listed origin and destination points in 48 states. Many said they needed a carrier with a variety of specific, specialized equipment, while others wanted additional service during peak periods or to meet their expanding needs.

Steere's request for consolidation of the case with other proceedings was denied. On appeal, the decision was affirmed and it was noted that Steere had failed to show how it could not advance its interests in separate proceedings. Steere now seeks judicial review.

5. We have already cautioned against relying uncritically on the legislative history of the Motor Carrier Act of 1980, observing that the legislative "debate" was conflicting, that the record of it contains more than one passage inserted after the fact, and that authority can be found to favor any of several interpretations. *American Trucking Associations,* 659 F.2d at 459. "We rely, therefore, on the statutory language, influenced, when the mandate is not clear, by reports of the Senate and House Committees." *Id.*

sulting extrinsic material unless the statutory language is unclear or the apparent clarity of language leads to absurdity of result when applied. *Id.*

The national transportation policy referred to by the parties in this case and contained in the Motor Carrier Act is set out at 49 U.S.C. § 10101 (Supp. V 1981):

(a) Except where policy has an impact on rail carriers, . . . to ensure the development, coordination, and preservation of a transportation system that meets the transportation needs of the United States, . . . it is the policy of the United States Government to provide for the impartial regulation of the modes of transportation subject to this subtitle, and—

(1) in regulating those modes—

(A) to recognize and preserve the inherent advantage of each mode of transportation;

(B) to promote safe, adequate, economical, and efficient transportation;

(C) to encourage sound economic conditions in transportation, *including sound economic conditions among carriers;*

(D) to encourage the establishment and maintenance of reasonable rates for transportation, without unreasonable discrimination or unfair or destructive competitive practices;

(E) to cooperate with each State and the officials of each State on transportation matters; and

(F) to encourage fair wages and working conditions in the transportation industry;

(2) in regulating transportation by motor carrier, to promote competitive and efficient transportation services in order to (A) meet the needs of shippers, receivers, passengers, and consumers; (B) allow a variety of quality and price options to meet changing market demands and the diverse requirements of the shipping and traveling public; (C) allow the most productive use of equipment and energy resources; (D) *enable efficient and well-managed carriers to*

*earn adequate profits, attract capital, and maintain fair wages and working conditions;* (E) provide and maintain service to small communities and small shippers and intrastate bus services; . . . (G) improve and maintain a sound, safe, and competitive privately owned motor carrier system; (H) promote greater participation by minorities in the motor carrier system; and (I) promote intermodal transportation; and

. . .

(b) This subtitle shall be administered and enforced to carry out the policy of this section.

(emphasis added).

We believe that the national transportation policy is clear in its manifestation of Congressional intent; there is no need to look beyond the statute. We have already held that the ICC, in evaluating applications for new CCNs, must consider all evidence in light of a number of factors, most notably those in the national transportation policy. *American Trucking Associations,* 659 F.2d at 474. *See* 49 U.S.C. § 10922(b).

Steere suggests that the ICC's present policy of allowing all but unlimited entry of new truck transportation providers into the market will produce ruinous competition among carriers. That argument is certainly logical to a point; of course Congress did not wish, by passing the Motor Carrier Act of 1980, to destroy the motor carrier industry. Nor, while it intended to make it easier for new trucking companies to enter the market by reducing regulation, did it intend to eliminate regulation entirely. *Steere V,* at 1303; *American Trucking Associations,* 659 F.2d at 459. Accordingly, Steere's insistence that the ICC evaluate the cumulative effect upon the market of new entrants to that market is not inconsistent with the mandate of the national transportation policy to insure "sound economic conditions among carriers." 49 U.S.C. § 10101(a)(1)(C).

Steere maintains that because the cumulative effect upon the market is an element of the national transportation policy, the ICC *must* articulate a finding when

the cumulative effect issue is properly raised. Steere's argument that it has a right to such a finding is based upon the requirements of 49 U.S.C. § 10922(b)(2) (Supp. V 1981) and a sentence from the House Report on the Motor Carrier Act of 1980:

> Persons opposing issuance of the application shall have the right to raise any element of the National Transportation Policy, including any factors listed in section 10101(a)(7)(A) through (H), to prove that the application is inconsistent with the public convenience and necessity and shall have the burden of providing evidence with regard to the applicable factors.

H.R.Rep. No. 1069, 96th Cong., 2d Sess. (1980) *reprinted in* (1980) U.S.Code Cong. & Ad.News 2283 at 2297. Thus, Steere asks this Court to hold that the ICC *must* make findings on the cumulative effect issue when that issue is properly raised by evidence.

■ Steere asks too much. While it is true that 49 U.S.C. § 10922(b)(2)(A) (Supp. V 1981) requires the ICC to make findings on the elements of the national transportation policy and that policy requires consideration of sound economic conditions among carriers, nowhere do either of the two statutes say that the ICC must specifically consider the cumulative effect upon the market of all new carriers it has allowed to enter that market. For us to hold what Steere asks would be to add a new requirement in the Motor Carrier Act of 1980; our discretion does not extend to rewriting that Act.

■ Nonetheless, the ICC is required to make adequate findings under the Motor Carrier Act. *Steere V,* at 1313. Its findings need not be "crystalline" nor detailed, and the Commission need not buttress each finding with supporting evidence from the record. *Id.* The findings must, however, be basic, specific, and definite, not mere ultimate findings or conclusions. *Id.* Moreover, the absence of a required finding is fatal even though there may be ample evidence to support such a finding. *Id.* But the ICC need not explicitly discuss each factor enumerated in 49 U.S.C. § 10101. It is required only that the essential basis of the ICC's rationale be clear enough so that a reviewing court can satisfy itself that the Commission has performed its function. *C & H Transportation Co.,* 704 F.2d at 847; *Alamo Express, Inc. v. ICC,* 673 F.2d 852, 860 (5th Cir.1982).

Accordingly, we have examined the records in these consolidated cases to determine whether the ICC made adequate findings as to the sound economic conditions among the carriers here.[6] While we do not find that the ICC's findings regarding the national transportation policy are precisely articulated in each record and we would welcome more clarity in the future, we are satisfied that the Commission adequately performed its function. Each record contains sufficient discussion to support the Commission's ultimate conclusions. Consequently, we are satisfied that the Commission adequately considered the pros and cons of the new grants of authority with a view toward the industry's economic well-being. In each case the Commission found that Steere had not shown sufficient harm to its operations to demonstrate inconsistency with the public convenience and necessity. It is apparent throughout the records that the ICC found Steere's "melodramatic list of adverse impacts" upon the motor carrier industry unpersuasive. Such cryptic findings have satisfied this Court in the past. *See, e.g., C & H Transportation,* 704 F.2d at 847; *Alamo Express,* 673 F.2d at 860. Accordingly, we decline Steere's invitation to remand these cases for further findings and conclusions.

### III. *Evidence*

■ Our review is limited to whether the ICC's grants of authority are arbitrary, capricious or abuses of discretion and whether they are supported by substantial evidence. *Steere Tank Lines v. ICC,* 675 F.2d 103, 105 (5th Cir.1982) (*Steere I*); *Steere II,* 687

6. Steere was not timely in raising its cumulative effect argument in all cases. The ICC was required to consider the issue only where it was raised in Steere's initial protests.

F.2d at 105; *Steere Tank Lines v. ICC,* 694 F.2d 413, 418–19 (5th Cir.1982) (*Steere III*); *Steere Tank Lines v. ICC,* 703 F.2d 927, 929 (5th Cir.1983) (*Steere IV*); *Steere V,* 714 F.2d at 1310. Once again we look to the Supreme Court's articulation of the scope of review in appeals from the ICC:

> A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." ... The agency must articulate a "rational connection between the facts found and the choice made." ... While we may not supply a reasoned basis for the agency's action that the agency itself has not given, ... we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447, 455–46 (1974) (citations omitted); *see Steere V,* 714 F.2d at 1310. "[T]he Commission's explanation need not be crystalline, as long as it enables the parties to understand the basis of the decision." *Id.; J.H. Rose Truck Lines,* 683 F.2d at 956; *Trailways, Inc. v. ICC,* 681 F.2d 252, 254 (5th Cir.1982); *Alamo Express,* 673 F.2d at 856; *Central Freight Lines, Inc. v. United States,* 669 F.2d 1063, 1074 (5th Cir.1982).

Steere argues that it showed inconsistency with the public convenience and necessity so that the ICC should not have granted the requested authority. To make its case, Steere had to show not only harm to its own operations but a corresponding injury to the public. *Dean Truck Lines, Inc. v. ICC,* 688 F.2d 254, 256 (5th Cir.1982). It is not the intent of current national policy to grant tenure of revenue or traffic to any given carrier. 49 U.S.C. § 10922(b)(2)(B) (Supp. V 1981). Carriers may come and carriers may go; the focus of national policy is on the shipping and traveling public and on the industry as a whole. The Commission disagreed with Steere that damaging economic effects upon Steere would harm the public simply because Steere would offer less service than previously. We find that there is substantial evidence in the records to affirm the Commission's determinations that Steere failed to meet its burden of proof in the nine ICC decisions here on appeal.

AFFIRMED.