**SUPER STORES, INC.,**
**Plaintiff-Appellee,**

v.

**Richard L. REINER,**
**Defendant-Appellant.**

**Paul Berkowitz, et al., Defendants.**

**No. 84–7031**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

July 26, 1984.

Peter F. Burns, Mark Newell, Mobile, Ala., for Reiner.

Thomas Troy Zieman, Jr., Michael D. Waters, Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

■■■ The district court adopted as its opinion the recommendations of the magistrate. We have reviewed the magistrate's recommendations, as adopted by the district court, and we find that they are a concise and correct disposition of the case. They are, therefore, adopted as our opinion, attached as an appendix. *See also Gund v. First Florida Banks, Inc.,* 726 F.2d 682, 686–87 (11th Cir.1984).

AFFIRMED.

### APPENDIX

### RECOMMENDATION OF THE MAGISTRATE

This action is submitted for recommendation on cross motions for summary judgment filed by the parties with respect to Count One of the complaint. All counts other than Count One were dismissed by the Order of the Court entered October 11, 1983. That Order allowed Plaintiff fifteen days to amend, but no amendment has been filed. Accordingly, Count One is the only claim remaining in this action. The motions for summary judgment with respect to that count have been referred to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(B), and this report and recommendation is entered in furtherance of that reference.

Plaintiff is Super Stores, Inc., a corporation. The only Defendant remaining is Richard L. Reiner, an individual who was formerly a director, executive officer, and shareholder in Plaintiff. Count One seeks recovery for short-swing profits in Plaintiff's stock allegedly realized by Plaintiff in violation of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b).

Section 16(b) provides in part as follows: For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.

The facts in this action are in material part undisputed and it is likewise undisputed that the language of § 16(b) is literally applicable. The material facts are as follows:

1. Plaintiff Super Stores, Inc., is an issuer within the meaning of § 16(b) and its common stock is registered with the Securities Exchange Commission.

2. Defendant Reiner was president and director of Plaintiff at all times relevant to the alleged § 16(b) violation.

3. On December 16 and 17, 1982, Defendant Reiner purchased 47,709 shares of the common stock of Plaintiff for 10¢ per share paid in cash or cash equivalent.

4. On May 27, 1983, Defendant sold 130,148 shares of Plaintiff's common stock at a price of 55¢ per share, with payment made in cash or cash equivalent.

5. The sale by Defendant on May 17, [sic] 1983, was to Mark Lyons, III, and Raymond Hirsch, who had made a public tender offer for the stock of Plaintiff.

6. During the several months prior to May 27, 1983, Defendant was president of SDS of Bog, Inc., and sole stockholder of

that corporation. A proposed merger agreement between Plaintiff and SDS of Bog, Inc., was approved on October 28, 1982, and resulted in a proxy solicitation to shareholders calling for a merger of the two corporations with an option in dissenting shareholders of Plaintiff to receive 10¢ per share of that stock. During early 1983 the proponents of that merger agreement raised the price to dissenting shareholders several times in response to changes in the amount per share offered by Lyons and Hirsch pursuant to their tender offer.

7. In May of 1983 it became clear to Defendant that Hirsch and Lyons would win the bidding war for the stock of Plaintiff. On May 27, 1982, [sic] Defendant voluntarily tendered all of his holdings in Super Stores to Hirsch and Lyons pursuant to their tender offer, which contained a price at that time of 55¢ per share.

8. The sale by Defendant to Hirsch and Lyons on May 27, 1983, included a sale of the 47,709 shares acquired in December 1982, less than six months earlier. Defendant realized a profit of 45¢ per share or $21,469.05 on this transaction.

9. As of May 17, [sic] 1983, Defendant was personally obligated through guaranties on approximately $114,000.00 in the obligations of Super Stores, Inc., and had loaned $10,000.00 to the corporation.

Defendant does not contest the literal applicability of § 16(b) to this transaction. Rather, he contends that he ought not be found liable under § 16(b) because his sale was "involuntary" and because this transaction was not the type of transaction to which Congress directed § 16(b) inasmuch as there was no possibility of abuse of inside information.

The premise for Defendant's claim for relief from literal application of the statute is the decision of the Supreme Court in *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973). Occidental made a tender offer for Kern's stock and acquired more than 10% of that stock. Kern and Tenneco entered into a defensive merger agreement which effectively blocked Occi-

dental's tender offer. Under that merger agreement Kern stockholders were to receive Tenneco stock in exchange for their Kern stock. Soon after commencing its tender offer, Occidental negotiated an option to sell to Tenneco all Tenneco stock acquired by Occidental under the merger. Effectuation of that agreement yielded Occidental a $19,000,000.00 profit of which recovery was sought under § 16(b). The time between Occidental's acquisition of Kern stock and its sale of Tenneco stock (acquired through the merger) back to Tenneco exceeded six months. In the § 16(b) action, Plaintiff asserted that the execution of the Occidental-Tenneco option and the exchange of Kern shares for Tenneco shares pursuant to the option were each "sales" within the meaning of § 16(b). Since both of those acts occurred within six months of Occidental's receipt of the $19,000,000.00 profit, a violation of § 16(b) occurred if those events properly were characterized as "sales".

The Supreme Court in its opinion set out an extended exegesis of § 16(b), its purpose and legislative history. It concluded that, in view of the harshness and arguable arbitrariness of the terms of the statute, in those cases where characterization of transactions as "sales" was not obvious, a determination whether a statutory sale had occurred should include consideration of congressional purpose, including particularly an inquiry into whether abuse of inside information had occurred. 411 U.S. at 593–95, 93 S.Ct. at 1744–45. The Court applied such analysis and determined that the congressional purpose would not be vindicated by characterization of either of the non-cash transactions involved there as "sales," and therefore determined that § 16(b) was not applicable.

In *Kern* the Court at two points indicated that the congressional purpose analysis was not material where the transactions were orthodox cash for stock transactions:

Although traditional cash-for-stock transactions that result in a purchase and sale or a sale and purchase within the six-month, statutory period are clearly with-

in the purview of § 16(b), the courts have wrestled with the question of inclusion or exclusion of certain "unorthodox" transactions.

*Id.* at 582, 93 S.Ct. at 1736.

Occidental could, of course, have disposed of its shares of Old Kern for cash before the merger was closed. Such an act would have been a § 16(b) sale and would have left Occidental with a prima facie § 16(b) liability.

*Id.* at 600, 93 S.Ct. at 1747.

■ In *Texas International Airlines v. National Airlines, Inc.*, 714 F.2d 533 (5th Cir.1983), the Fifth Circuit, in a case generally analogous to this one, analyzed *Kern* in detail, including the passages set out immediately above, and determined that the *Kern* "congressional purpose" analysis was not applicable in a situation where a simple cash for stock transaction occurred. Since such a transaction was unquestionably a sale squarely within the meaning of the statute, there was no basis for creation of an exemption under the principles of *Kern.* Evaluation of the congressional purpose is available only when there is some uncertainty as to the applicability of the statutory language. *Cf. Villeneuve v. Advanced Business Concepts Corp.*, 698 F.2d 1121 (11th Cir.1983); *Gordon v. Terry*, 684 F.2d 736 (11th Cir.1982); *Kaye v. Pawnee Construction Co.*, 680 F.2d 1360 (11th Cir.1982); *King v. Winkler*, 673 F.2d 342 (11th Cir.1982) (all dealing with the characterizations of certain unusual transactions as involving "securities" in light of the congressional purpose in passing the securities acts).

■ In this action a corporate officer and director facing defeat in a tender offer battle voluntarily tendered his stock to his opponents for cash. Nothing in *Kern* creates an exception for such a transaction from the short-swing profit prohibitions of § 16(b). *Texas International Airlines v. National Airlines, Inc., supra.*

The material facts in this action are undisputed and Plaintiff has shown itself entitled to judgment as a matter of law. Accordingly, the Magistrate recommends that Plaintiff's motion for summary judgment be granted and Defendant's motion for summary judgment be denied, and that judgment be entered in favor of Plaintiff in the amount of Defendant's short-swing profit, $21,469.05.

■ Plaintiff has advanced a claim for attorneys' fees. There is no statutory provision for the award of attorneys' fees in § 16(b) cases. The cases cited by Plaintiff in which fees have been awarded involve claims where recovery is sought on behalf of the corporation by one of its shareholders, and fees are awarded to the shareholder out of the fund created by the recovery. In those cases, no liability for fees is imposed upon the Defendant. In this action, the Plaintiff is the corporation itself, and no award of fees is appropriate.

The attached sheet contains important information regarding objections to this recommendation.

DONE this 22nd day of November, 1983.

/s/ Patrick H. Sims
UNITED STATES MAGISTRATE