**In re Harry Jackson HUGHES, Debtor.**

**Bankruptcy No. 7–85–00690.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Feb. 9, 1987.

A. Carter Magee, Roanoke, Va., for debtor.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

### Facts

This matter comes before the Court on the Motion to Convert filed by the Debtor, Harry Jackson Hughes, to convert from Chapter 13 under Title 11 of the *United States Code* to Chapter 12 under Title 11 of the *United States Code.* Permanent Savings Bank, having filed a response in opposition to the Motion to Convert, appeared by counsel, and the Debtor appeared in person and by counsel. Upon the evidence presented, the Court makes the following findings of fact:

The Debtor, Harry Jackson Hughes, filed his petition for relief under Chapter 13 of Title 11 of the *United States Code* on June 19, 1985. At the time of his filing of the petition for relief, the Debtor was engaged in the business of boarding horses and in some form of cattle farming. The Debtor owns two parcels of real estate consisting of a farm in Pulaski County, Virginia, at which he resides and conducts his business and a piece of rental property located on High Street in the Town of Pulaski, Virginia, from which he derives rental income in the amount of $400.00 per month from the tenant.

The Debtor obtained a confirmed Chapter 13 Plan on September 3, 1985, which Plan required the Debtor to pay into the Chapter 13 Trustee the sum of $50.00 per month for the benefit of unsecured creditors. There were numerous secured creditors of the Debtor and his Plan provided that they would be paid "outside" the Plan. In reality, the Debtor's proposal was to pay the secured creditors directly and not through the Chapter 13 Trustee. One of the secured creditors provided for in the Plan to be paid directly by the Debtor was Landbank Equity Corp. Permanent Savings Bank is the successor in interest to the indebtedness owed by Debtor to Landbank Equity, which indebtedness is secured by the liens of two deeds of trust on each of the pieces of real estate owned by the Debtor and referred to above.

Subsequent to the confirmation of Debtor's Chapter 13 Plan in September of 1985, the Debtor suffered business reversals due to ill health and he testified that he had only recently begun to rebuild his business of boarding horses on his farm in Pulaski County. Evidence presented at hearing on the Motion revealed that the Debtor had been delinquent in his Chapter 13 Plan payments and had only recently made a payment to the Trustee in an effort to cure the default. Evidence presented also revealed that the Debtor was seventeen (17) monthly payments behind in his payment of secured indebtedness to Permanent Savings Bank resulting in an aggregate deficiency of $65,947.25 under the notes secured by the deeds of trust on both properties. The parties stipulated into evidence as Exhibits A and B the two deeds of trust securing the indebtedness owed to Permanent Savings Bank and the two deeds of trust show an aggregate original principal unpaid face amount of $198,023.00. The parties further stipulated into evidence, as Exhibits C and D, respectively, two appraisals. The appraisal of the High Street property located in the Town of Pulaski, Virginia, showed a fair market value of $50,000.00 and a "quick sale" value of $40,000.00. The appraisal for the farm in Pulaski County showed a fair market value of

$165,500.00 and a "quick sale" value of $82,750.00. Counsel for the Debtor in arguing his Motion to Convert relied on the "quick sale" values shown by the appraisals. Finally, the Debtor testified that his current income from the horse boarding operation was approximately $1,000.00 to $1,200.00 per month. The monthly payments required to service the secured debt are $2,908.37. *See,* Exhibits E and F.

### Law

Subtitle B of Title II of Pub.L. No. 99–554, known as the *Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986* (the "Act"), contains the provisions for Chapter 12 of Title 11 of the *United States Code* covering debtors who are family farmers. Section 302(c) of the Act states as follows:

> (c) AMENDMENTS RELATING TO FAMILY FARMERS.—(1) The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of this Act.

The effective date of the Act was November 26, 1986, and in view of the fact that Debtor filed his Chapter 13 on June 19, 1985, counsel for Permanent Savings Bank relies on the foregoing section of the Act in support of his argument that the Debtor is not entitled to convert his Chapter 13 case to a Chapter 12 case.

Counsel for the Debtor acknowledges the specific language of § 302(c)(1) of the Act but argues that the Court must look to the legislative history of the Act as embodied in the joint explanatory statement of the Committee of Conference which states as follows:

> APPLICABILITY OF CHAPTER 12 TO PENDING CHAPTER 11 AND 13 CASES.
>
> It is not intended that there be routine conversion of Chapter 11 and Chapter 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected the courts will exercise their sound discretion

in each case, in allowing conversions only where it is equitable to do so.

Conference Report No. 958, 99th Cong., 2d Sess. 48, 132 Cong.Rec. H8999 (daily ed. October 2, 1986).

Counsel for the Debtor argues further that the need for determining the legislative intent of Congress is necessary in view of § 256 of the Act which provides for an amendment to § 1112(d) of title 11 to provide for conversion from Chapter 11 to Chapter 12.

■ This Court is of the opinion that the reliance placed by counsel for the Debtor on the legislative history and on § 256 of the Act is misplaced. The language of § 302(c)(1) of the Act is clear and unambiguous. It is a fundamental rule of statutory construction that when the language of a statute is clear and unambiguous, the Court may look beyond the letter of the statute in interpreting it only in the most exceptional circumstances. *See, e.g., Wisconsin Electric Power Company v. Department of Energy,* 778 F.2d 1, 4 (D.C. Cir.1985); *Super Stores, Inc. v. Reiner,* 737 F.2d 962, 965 (11th Cir.1984); *Steere Tank Lines, Inc. v. I.C.C.,* 724 F.2d 472, 477–78 (5th Cir.1984). In this case, the Debtor urges the Court to utilize the legislative history in such a way as to totally disregard § 302(c)(1). The sole function of § 302(c)(1) is to prevent the application of the Chapter 12 provisions to cases pending at the time of its effective date. To give effect to the Conference Report, and to ignore the clear mandate of § 302(c)(1), would be to rewrite the Act, not to interpret it. This Court is without the power to do what the Debtor advocates.

With respect to § 256 of the Act, it is clearly a portion of subtitle B of title II of the Act and § 302(c)(1) clearly states that the amendments, of which § 256 is one, made by subtitle B of title II shall not apply with respect to cases commenced under Title II of the *United States Code* before the effective date of the Act.

■ In view of the foregoing, this Court holds that § 302(c)(1) of the *Bankruptcy*

*Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986* prohibits conversion of a Chapter 13 case pending on or before November 26, 1986, the date of the enactment of the Act, to Chapter 12.

As further grounds for denial of the Motion to Convert in the instant case, the Court notes that the statutory authority cited by counsel for the Debtor in his Motion to Convert is 11 U.S.C. § 1208. This Code section is inapplicable since it deals solely with grounds for conversion from Chapter 12 to another chapter under Title 11 of the Code. Further, a search of the statutory provisions in Chapter 13 of Title 11 reveals no authority for conversion of a Chapter 13 case to a Chapter 12 case after the Chapter 13 plan has been confirmed. As set forth above in the factual section of this Memorandum Opinion, the Debtor's Plan was confirmed on September 3, 1985. Accordingly, there is no statutory basis for conversion of this case to Chapter 12.

The Motion of the Debtor to convert from Chapter 13 to Chapter 12 will be denied and an appropriate order will issue.