**In re Joseph E. ANDERSON, Ida Marie Anderson, Debtors.**

**Bankruptcy No. 86A–00085.**

United States Bankruptcy Court,
D. Utah, N.D.

March 6, 1987.

---

Robert D. Atwood, Logan, Utah, for debtors.

## MEMORANDUM OPINION

JOHN H. ALLEN, Bankruptcy Judge.

### CASE SUMMARY

This matter is before the Court on the debtor's uncalendared motion to convert the debtor's Chapter 11 case to a case under Chapter 12. The Court is called upon to decide whether these debtors may convert their case as requested.

### FACTUAL AND PROCEDURAL BACKGROUND

The debtors, Joseph E. and Ida Marie Anderson, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 9, 1986.

The debtors are sole proprietors who run a farming operation. They filed for relief because of financial difficulties caused by low market prices for their crops and crop loss due to inclement weather. There is no income other than from the farming operation.

The farming operation consists of 258 acres under cultivation. Most of the acreage is planted in wheat, the rest in barley.

In their schedules the debtors include priority claims in the amount of $7,846.12, secured claims of $397,524.10, and unsecured claims totalling $19,765.00. There is no confirmed plan under Chapter 11, and the debtors have not been discharged pursuant to 11 U.S.C. § 1141(d).

### ISSUES

The Court must decide three basic issues: (1) can the case be converted to one under Chapter 12, (2) is there a notice and hearing requirement, and (3) what findings must the Court make.

### DISCUSSION

The Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986 (hereinafter 1986 Act) was enacted on October 27, 1986, as Pub.L. No. 99–554. The law makes extensive amendments to the Bankruptcy Code on various substantive issues, including numerous technical amendments and adds new Chapter 12.

The new Chapter 12 is a combination of eighteen months of effort of both the House and Senate judiciary committees and creates a separate chapter patterned very closely after existing Chapter 13 but which alters certain provisions which were not deemed appropriate for the family farmer. Its purpose is to create special treatment for the family farmer. *See,* 135 Cong.Rec., S 15075, et. seq. (Oct. 5, 1986).

The family farmer is generally defined as an individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1.5 million with at least 80% of the debts and 50% of their gross income coming from farming operation. 11 U.S.C. § 101(17).

If the family farmer is a corporation or partnership, more than 50% of the outstanding stock must be held by one family, more than 80% of the value of the assets must be related to the farming operation, its aggregate debts must not exceed 1.5 million with not less than 80% arising out of farm operation and the stock cannot be publicly traded. 11 U.S.C. § 101(17).

In addition, to be eligible for Chapter 12, the family farmer must have "regular income." This is defined as one whose annual income is sufficiently stable and regular to make payments under a plan. 11 U.S.C. § 101(18). If the debtor meets these threshold requirements, the farmer is eligible for an adjustment of debts under the new Chapter 12.

Section 302(a) of the 1986 Act provides that the general effective date of the Act is November 26, 1986, 30 days after the date of enactment which was October 27, 1986. The statute specifically states in Section 302(c) of the Family Farmer Bankruptcy Act that the family farmers provision "shall not apply with respect to cases commenced ... before the effective date of this Act." Thus, it could appear from the language of Section 302(c) that cases pending, prior to November 26, 1986, cannot be converted to Chapter 12. *See, In re Albertson*, 68 B.R. 1017 (Bktrcy.W.D.Mo.1987); *In re Groth*, 69 B.R. 90 (Bkrtcy.D.Minn. 1987); *In re B.A.V., Inc.*, 68 B.R. 411 (Bkrtcy.D.Colo.1986); *In re Tomlin Farms, Inc.*, 68 B.R. 41 (Bkrtcy.D.N.D. 1986); *In re Harry Jackson Hughes*, 70 B.R. 66 (Bkrtcy.W.D. VA 1987).

However, a better interpretation of 302(c) of the 1986 Act would indicate simply that the provisions of the act shall not be given retroactive application. *See, In re Erickson Partnership*, 68 B.R. 819 (Bkrtcy.D.S.D.1987); *In re Big Dry Angus Ranch, Inc.*, 69 B.R. 695 (Bkrtcy.D.Mont. 1987); *In re Robert N. Mason*, 70 B.R. 753 (Bkrtcy.1987). In interpreting Section 302(c) we must "remember that statutes always have some purpose or objective to accomplish whose sympathetic guide and imaginative discovery is the surest guide to their meaning." *In re Gibraltor Amusements, Ltd.*, 291 F.2d 22, 28 (2d Cir.), *cert. denied, Gibraltor Amusements, Ltd. v. Wurlitzer Company*, 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961) (Friendly, J., dissenting).

Therefore, this Court believes that the statutory enactments of Congress must be considered in accordance with the environment necessitating the legislation. Congress enacted the Family Farmer Bankruptcy Act of 1986 against a background in which the "finances of farmers are in jeopardy and close to ruination". 135 Cong. Rec. § 15086 (daily ed. Oct. 3, 1986). To appreciate that background it is necessary to consult the legislative history.

The Committee Conference Report is the most authoritative legislative history and it is that upon which the Court bases its reliance:

In surveying legislative history we have repeatedly stated that the authoritative source for finding legislative intent lies in the Committee Reports on the bill which represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation. *Zuber v. Allen*, 396 U.S. 168, 186 [90 S.Ct. 314, 324, 24 L.Ed.2d 345] (1969), *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479 [483], 83 L.Ed.2d 472 (1984).

Under the circumstances before us, reliance on the Committee Conference Report is mandated. Limitations on or qualifications of statutory language are necessary when the intent of Congress is demonstrated with "extra ordinary clarity in the legislative history." *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

The legislative history makes it clear that Congress contemplated conversion of pending Chapter 11 and Chapter 13 cases to cases under Chapter 12. The Joint Explanatory Statement of the Congressional Conference Committee (Committee Conference Report) even contains the factors to be used by the Court when such conversion motions are brought before it. The Committee Conference Report states:

APPLICABILITY OF CHAPTER 12
TO PENDING CHAPTER 11
AND 13 CASES

It is not intended that there be routine conversion of Chapter 11 and 13 cases,

pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.

Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases when a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

H.R.Rep. 5316 Conf.Rep. No. 99-598, U.S. Code Cong. & Admin.News 1986, pp. 5227, 5249.

It is inescapable that Chapter 12 had its genesis as a law to protect farmers from financial ruin. The Overview of the Family Farmer Subtitle of the Conference Report reflects the concern Congress felt for the plight of the farmer.

Under current law, family farmers in need of financial rehabilitation may proceed under either Chapter 11 or Chapter 13 of the Bankruptcy Code. Most family farmers have too much debt to qualify as debtors under Chapter 13 and are thus limited to relief under Chapter 11. Unfortunately, many family farmers have found Chapter 11 needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable.

Accordingly, this subtitle created a new chapter of the Code—Chapter 12—to be used only by family farmers. It is designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land. It offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment.

H.R.Rep. 5316, Conf.Rep. No. 99-598, p. 48, U.S.Code Cong. & Admin.News 1986, p. 5249.

On October 3, 1986, Senator Grassley, a member of the House-Senate Conference Committee on H.B. 5316 spoke briefly concerning the Farm Bankruptcy Subtitle of the Committee Conference Report.

The numbers of farms in financial trouble or on the brink of foreclosure is well known. But the measure of the crisis in agriculture isn't measured by cold numbers on a page. Instead, I measure it in terms of the human tragedy, the disruption of lives, and the despair of being a middle-aged farmer suddenly told to find another livelihood to support a family.

I hear it and I see it when I go back home every weekend. I know my colleagues have seen it too. We simply must stop the displacement. We must stop the bleeding on the farm ... the purpose is to give family farmers a fighting chance.

135 Cong.Rec. S 15075 daily ed., Oct. 3, 1986 (remarks of Senator Grassley).

In seeking out the legislative history the Court is further guided by the succinct reasoning of Justice Powell in *Kelly v. Robinson*, —— U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

Of course, the "starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 [95 S.Ct. 1917, 1935, 44 L.Ed.2d 539] (1975) (POWELL, J. concurring). But the text is only the starting point. As JUSTICE O'CONNOR explained last Term, " ' "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to is object and policy." ' " *Offshore Logis-*

*tics, Inc. v. Tallentire*, 477 U.S. ——, —— [106 S.Ct. 2485, 2494, 91 L.Ed.2d 174] (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285 [76 S.Ct. 349, 359, 100 L.Ed. 309] (1956)) (quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122 [12 L.Ed. 1009] (1850)).

 The Court has found nothing in the legislative history to indicate that Congress intended to penalize those beleagured farmers already in bankruptcy by requiring them to remain in an "unworkable" Chapter 11 or Chapter 13 while fashioning a remedy for others. When the literal application of a statute would produce a result "demonstrably at odds with the intentions of its drafters," the actual legislative intent must control our disposition. *See, Griffin v. Oceanic Contractors*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

Chapter 13 has been inadequate for many farmers because of the following Chapter 13 requirements which are eliminated in Chapter 12:

1. Debt limits ($350,000 secured and $100,000 unsecured.) 11 U.S.C. § 109(e).

2. Debtor must be an individual, not a partnership or corporation. 11 U.S.C. § 109(e).

3. The plan must be filed with the petition or within 15 days after the filing of the petition and this time limit cannot be extended except for cause. B.R. 3015.

4. Plan payments must start within 30 days of plan filing. 11 U.S.C. § 1326(a)(1).

5. Most Courts require monthly payments in Chapter 13 cases. *See*, Local Rule No. 32 of the United States Bankruptcy Court for the District of Utah.

Moreover, under Chapter 12, debt secured by the debtor's principal residence can be modified. This was not possible under Chapter 13, 11 U.S.C. § 1322(b)(2), 11 U.S.C. § 1222(b)(2).

Chapter 11 has been inadequate for many farmers because of the following, which are eliminated in Chapter 12:

1. The expense and delays caused by the required creditors committee and their counsel and required court approved disclosure statements. 11 U.S.C. §§ 1102, 1103, and 1125.

2. Creditors could file liquidating or other plans. 11 U.S.C. § 1121(c).

3. The "absolute priority rule" required that before the debtor could retain any property, it must pay all dissenting classes in full, with interest. 11 U.S.C. § 1129(b)(2)(C)(ii).

4. The "1111(b) election" which permitted undersecured creditors to elect to be treated as if they were fully secured.

5. The requirement of obtaining the acceptance of at least one impaired class and the voting majorities required for acceptance of a plan. 11 U.S.C. §§ 1129(a)(10), 1126(c).

6. The requirement that priority claims (such as professional fees and tax claims) be paid in full as of the effective date of the plan or within other specified time limits. 11 U.S.C. § 1129(a)(9)(A), (B) Under Chapter 12, there is no time limit for payment of such claims, although all such claims must be paid in full within the 3–5 year plan period. The statute may be ambiguous as to whether the family farmer must pay interest on priority claims whose payments are deferred over time.

Additionally, in some jurisdictions court rulings have required interest payments to undersecured creditors. These rulings have required periodic payments equal to the liquidation value of the collateral. This requirement has made it difficult for farmers whose land has declined in value and who are frequently unable to pay such payments. *American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984); *But see, In re Timbers of Inwood Forest Associates*, 793 F.2d 1380 (5th Cir.1986) *aff'd en banc*, 808 F.2d 363 (5th Cir.1987).

## NOTICE AND HEARING REQUIREMENTS

Section 1307(d) allows any interested party "after notice and hearing" to request

conversion of a Chapter 13 case to a case under Chapter 12. This section is limited by § 1307(e) which does not allow conversion if the debtor is a farmer unless the debtor requests such conversion. "After notice and hearing" is, of course, defined in Section 102(1) to mean "after such notice as is appropriate in the particular circumstances" with certain exceptions not important here.

Section 1112(b) allows conversion from Chapter 11 to Chapter 12 if the debtor requests conversion and "such conversion is equitable."

Bankruptcy Rule 2002(a)(7) requires twenty days notice to all parties in interest for a motion to convert or dismiss a case under Chapter 7 or 11. Although the rule is silent with respect to a similar motion in a case under Chapter 13, this Court believes the notice requirement of Bankruptcy Rule 2002(a)(7) should apply.

### CONCLUSION

■ Based on the foregoing, the debtors must comply with the notice and hearing requirements for conversion of this Chapter 11 case to one under Chapter 12. At the hearing, the debtors must convince the Court that equity allows conversion based on the factors suggested in the legislative history. The Court is required to look at the substantial likelihood of a successful reorganization under Chapter 12, what action has occurred in the pending case, if a plan has been filed or confirmed in the pending case, how recently the case was filed and if interested parties who have substantially relied on current law will be adversely affected.

The debtors will govern themselves in a manner consistent with this decision.