In re Floyd A. GLAZIER and Dorothy Glazier, Debtors.

Bankruptcy No. 86–03687–B.

United States Bankruptcy Court, W.D. Oklahoma.

Feb. 3, 1987.

---

Michael A. Taylor of Bloodworth & Associates, Oklahoma City, Okl., for debtors.

Eleanor Darden Thompson, Asst. U.S. Atty., Oklahoma City, Okl., for the United States Government.

Mary S. Thompson of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Kingfisher Bank and Trust Co.

Claudia Conner, Deputy Gen. Counsel, Oklahoma City, Okl., for State of Oklahoma ex rel. Commissioners of the Land Office.

## MEMORANDUM DECISION AND ORDER

PAUL B. LINDSEY, Bankruptcy Judge.

Debtors have moved to convert this case to one under Chapter 12 pursuant to 11 U.S.C. § 1307(d) as amended by The Bankruptcy Judges, United States Trustees, and Family Farmers Bankruptcy Act of 1986, Pub.L.No. 99–554 ("The Act"). The issue before the court is whether debtors in a Chapter 13 case pending on the effective date of The Act may convert their case to one under Chapter 12.

Debtors' Chapter 13 petition was filed and relief ordered in July 1986. The papers on file indicate that debtors have been self employed as farmers for approximately 12 years. Most income is derived from the farming operations with a relatively small amount from leases and oil and gas royalties. Once the security interests of creditors were determined, the debtors realized that they were not eligible to be debtors under Chapter 13 because the secured debt limits of 11 U.S.C.A. § 109(e) (West 1979 & Supp.1986) were exceeded. Debtors subsequently moved to convert the case to Chapter 11. However, apparently because Chapter 12 was enacted, debtors withdrew their motion to convert the case to Chapter 11 and requested conversion of the case to Chapter 12.

Chapter 12, entitled "Adjustment of Debts of a Family Farmer With Regular Annual Income" and contained in Subtitle B of Title II of The Act and to be codified at 11 U.S.C. § 1201 *et seq.*, was signed by the President on October 27, 1986. The effective date of The Act was November 26, thirty days after it was signed. The Act, Sec. 302(a).

The Act includes a new § 109(f) which limits Chapter 12 relief to those who are "family farmers with regular annual income". New subsections 101(17) and (18) define "family farmer" and "family farmer with regular income". Subsection

101(17)(A) applies to individuals engaged in farming as is the case here. That subsection limits the availability of Chapter 12 relief to those whose aggregate debt is less than $1.5 millions, at least 80% of which is farm debt, and whose gross income is at least 50% attributable to the farming operation.

Subsection 101(18) requires that a Chapter 12 debtor enjoy a sufficiently stable and regular income to assure that the debtor will be able to make payments under a plan. A cursory review of the file indicates that the debtors meet these requirements. This, however, does not resolve the determinative issue: Whether a "family farmer with regular income" who sought protection pursuant to another Chapter of the Code prior to the effective date of The Act may convert his case to Chapter 12. The court must thus ascertain whether The Act permits pending cases to be converted. This question is answered in the negative by the clear language of The Act.

■ Section 302 of The Act is the enabling provision addressing the applicability of laws during the transition period. Section 302(c)(1) of The Act states:

Amendments Relating to Family Farmers—(1) The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of this Act."

Subtitle B of title II of The Act includes the language which adds Chapter 12 to title 11, the Chapter 12 provisions, and, *inter alia*, amendments to § 1307(e) which implicitly authorize conversion from Chapter 13 to Chapter 12. The language of Sec. 302(c)(1) of The Act is clear—it means that a debtor with a case pending under Title 11 on November 26, 1986 cannot take advantage of amendments made by subtitle B of title II including the Chapter 12 provisions. *In re Groth*, 69 B.R. 90 (Bankr.D.Minn. 1987); *In re B.A.V., Inc.*, 68 B.R. 411 (Bankr.D.Colo.1986); *In re Tomlin Farms, Inc.*, 68 B.R. 41 (Bankr.D.N.Dak.1986).

The debtor urges the court to consider the legislative history of The Act to determine the intent of Congress. In particular the court is urged to consider the words of the author of the Conference Committee Report on The Act, H.Rep. No. 958, 99th Cong., 2nd Sess., 132 Cong.Rec. 8999, who wrote:

It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.

Chief among the factors the court should consider is whether there is substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

This language is the basis of debtors' position and in fact does indicate that the Committee intended cases pending under title 11 to be convertible to Chapter 12 where it would be equitable to do so.

Nevertheless, it is a well established rule of statutory construction that a court may consider the legislative history of an act or statute only where the language of the statute is ambiguous or unclear. *United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985); *Edwards v. Valdez*, 789 F.2d 1477 (10th Cir.1986).

Debtor asserts that there is such an ambiguity here, but does not point it out or even hint at what it might be. The court has found no ambiguity in Sec. 302(c)(1) of The Act and concludes that any ambiguity

which may exist has been created by the language of the Committee Report and not by the language of the statute. While the court may share the stated desire of the Committee, to permit conversion of pre-Act cases where equitable, to fulfill that desire would directly contravene the clear language of the statute. The motion to convert to Chapter 12 must therefore be denied.

■ The court notes that there is no language to prevent conversion of a case filed after the effective date of The Act to one under Chapter 12. Further, 11 U.S.C. § 109(g) does not prevent the refiling of a case under Chapter 12 where it has been involuntarily dismissed.

■ The debtors are not eligible to continue this case under Chapter 13 because according to their attorney's statements, the debts exceed the statutory limits. 11 U.S.C.A. § 109(e) (West 1979 & Supp.1986). This court is without jurisdiction to hear the matter further because it is without power to grant relief. *In re Tashman*, 13 B.R. 549 (Bankr.D.Vt.1981); *In re Kelsey*, 6 B.R. 114 (Bankr.S.D.Tex.1980). The case therefore will be dismissed unless the debtor moves within 10 days to convert to Chapter 11 or Chapter 7 of the Code. Since other pending motions may be rendered moot the court will not consider them at this time.