In re David E. ROSSMAN, Debtor.

In re Richard L. ZOOK and Karen S. Zook, Debtors.

In re James C. BRADLEY and Barbara J. Bradley, Debtors.

In re David N. SCHAFER, Debtor.

In re Herbert F. HAIGHT and Kathleen A. Haight, d/b/a H. Haight & Son Farms, Debtors.

In re Daniel J. HAIGHT and Shelly J. Haight, d/b/a H. Haight & Son Farms, Debtors.

In re Richard F. HOLLAND and Patricia J. Holland, d/b/a Great Lakes Greenhouses and Casual Living Plant and Patio Shop, Debtors.

In re Bruce E. HOMKES, d/b/a Bruce Homkes Hog Farm, Debtor.

Bankruptcy Nos. NK 86–00385, NG 86–01755, NG 86–02040, HK 86–02305, HK 86–02527, HK 86–02528, HG 86–03250 and HG 86–03272.

United States Bankruptcy Court, W.D. Michigan.

March 17, 1987.

Robert J. Pleznac, Kalamazoo, Mich., for debtor Rossman.

Anderson & Stull, P.C. (Daniel L. Kraft, Esq.), Lansing, Mich., for debtors Zooks, Bradleys, Herbert Haights, and David Haights (filed briefs for conversion).

Scheuerle, Legatz & Zitta (Robert J. Zitta), Grand Haven, Mich., for debtors Holland (filed brief for conversion).

Edward Read Barton, P.C., Allegan, Mich., for debtor Schafer (filed brief for conversion).

Martin L. Rogalski, P.C. (Martin L. Rogalski, and James H. Richards), Jenison, Mich., for debtor Homkes (filed briefs for conversion).

Hubbard, Fox, Thomas, White & Bengston, P.C. (Peter A. Teholiz), Lansing, Mich., for Production Credit Association of Mid-Michigan (filed briefs against conversion).

Foster, Swift, Collins & Coey, P.C. (Philip T. Savich), Lansing, Mich., for John Deere Company (filed brief against conversion).

Rhoades, McKee & Boer (Timothy Hillegonds), Grand Rapids, Mich., Law Offices of Richard L. Dobbins (Michael L. Clore), Concord, Mich., for The Federal Land Bank of Saint Paul (filed briefs against conversion).

Deming, Hughey, Lewis, Keiser, Allen & Chapman, P.C. (Thomas C. Richardson), Kalamazoo, Mich., for Farm Credit Services (filed *amicus curae* brief against conversion).

## MEMORANDUM ON CHAPTER 12 CONVERSION MOTIONS

DAVID E. NIMS, Jr. and LAWRENCE E. HOWARD, Bankruptcy Judges.

The issue in these cases is whether this court may convert a bankruptcy case pending on November 26, 1986, the effective date of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, to a case under the newly enacted Chapter 12 of the Bankruptcy Code.

## BACKGROUND

The above-encaptioned family farm cases were filed under either Chapter 7, 11, or 13 of the Bankruptcy Code between February 12, 1986, and November 19, 1986.[1] Thus, all cases were pending on November 26, 1986, the effective date of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088 (hereinafter "the Family Farmer Act"). Recently, each debtor has moved independently for conversion of its case to Chapter 12 under the Family Farmer Act. The Court has consolidated these motions[2] because they all present a common question of law.

The issue in these cases is whether we may convert a bankruptcy case pending on November 26, 1986, the effective date of the Family Farmer Act, to a case under the recently enacted Chapter 12 of the Bankruptcy Code.[3] The various facts of the cases before us have not been presented nor considered here because they are relevant only if the court finds conversion is permissible. The issue, submitted on briefs only, was considered *en banc* by both bankruptcy judges for this district in order to provide a definitive ruling for this jurisdiction.[4] Many briefs were filed, including an *amicus curae*, and we deeply appreciate the insight they provided us.[5]

## DISCUSSION

### Origin of the Issue

The movants claim that in spite of certain prohibitory language in the Family Farmer Act, Congress intended that conversion be granted. While our duty is not to make the law, we must certainly determine the intent of Congress' laws. To best

1. We were curious why a bankruptcy petition would be filed on the eve of the effective date of the Family Farmer Act. Two reasons appear from the cases before us. In one case, the attorney for the debtor was not a bankruptcy specialist and was simply not aware of the impending Family Farmer Act. In another case, the farmer had no choice—a foreclosure sale of his farm was scheduled prior to November 26, 1986.

2. Since the time of our consolidation, the motion to convert filed in *In re Schafer*, No. HK 86–02305, has been withdrawn.

3. One of the movants has not so discretely hinted that if his conversion motion is denied, he will simply request that his case be dismissed and subsequently file a Chapter 12 petition. The issue of the propriety of dismissing and immediately refiling is not presently before the court and we will therefore neither discuss nor decide it here. *See generally In the Matter of Woloschak Farms*, 70 B.R. 498 (Bankr.N.D.Ohio 1987); *but cf. Central Trust Co. v. Official Creditors' Committee (In re Geiger)*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982).

4. By this means the court has sought to avoid a division like that which occurred within the northern district of Alabama between the courts in *In re Henderson*, 69 B.R. 982 (Bankr.N.D.Ala. 1987) and *In re Petty*, 69 B.R. 412 (Bankr.N.D. Ala.1987).

5. While reading the briefs we noticed that two of them sounded remarkably similar—so similar, in fact, that we discovered several identical paragraphs. Such slapdashery, at a minimum, lacks originality and may even smell somewhat of plagiarism.

determine the intent of Congress, we must first analyze the portions of the statute in question.

The organization of the Family Farmer Act is significant and merits a brief presentation here. Title II of the Family Farmer Act is entitled: "Amendments to Title 11 of the United States Code." Subtitle B of title II is encaptioned: "Debtors Who Are Family Farmers." Section 255 of subtitle B amends title 11 by inserting Chapter 12. Various other sections of subtitle B amend 11 U.S.C. §§ 706(a), 1112(d), 1307(d), and 1307(e) so as to permit eligible debtors to voluntarily convert from Chapters 7, 11, and 13 to Chapter 12.

Title III of the Family Farmer Act is entitled "Transition and Administrative Provisions." Section 302 under this title is encaptioned: "Effective Dates; Application of Amendments." This section is divided into six subsections designated by the letters (a) through (f). We are concerned primarily with subsections (a) and (c). Subsection (a) of § 302 provides:

(a) General Effective Date.—Except as provided in subsections (b), (c), (d), (e), and (f), this Act and the amendments made by this Act shall take effect 30 days after the date of the enactment of this Act.

President Reagan signed the Family Farmer Act into law on October 27, 1986, thereby making most of the amendments effective on November 26, 1986. Subsection (c)(1) of § 302 provides:

(c) Amendments Relating to Family Farmers.—(1) The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of this Act.

Substituting specific references for their respective antecedents, § 302(c)(1) reads as follows:

The amendments [permitting eligible debtors to voluntarily convert from Chapter 7, 11, and 13 to Chapter 12] shall not apply with respect to cases commenced under [the Bankruptcy Code] before [November 26, 1986].

Thus, on its face, § 302(c)(1) prohibits the conversion to Chapter 12 of any case filed before implementation of the Family Farmer Act. Apparently, none of the movants is eligible for conversion.

The movants, however, allege that a statutory construction problem arises not by the statute itself, but by language found in the Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess, U.S.Code Cong. & Admin.News 1986, p. 5246 (hereinafter "Explanatory Statement" and "Conference Committee," respectively). The conflicting commentary in the Explanatory Statement follows the heading "Applicability of Chapter 12 to Pending Chapter 11 and 13 Cases" and reads:

It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.

Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

*Id.* The Explanatory Statement does indeed create confusion and merits further discussion.

*Legislative History*

In the spring of 1986, the U.S. Senate was considering S. 1923, 99th Cong. 2d

Sess. (1986), a bill to provide for additional bankruptcy judges. An amendment to create the new Chapter 12 was added to this bill. At that time § (5) of this amendment included the changes to 11 U.S.C. §§ 706, 1112, and 1307 permitting voluntary conversion of cases from Chapters 7, 11, and 13 to Chapter 12. Section (6) of the amendment then provided as follows:

> Sec. 6.(a) This Act is an emergency measure and this Act and the amendments made by this Act shall apply with respect to cases commenced under title 11, United States Code, *after the date of the enactment of this Act* but before 5 years after such date.

132 Cong.Rec. S5617 (daily ed. May 8, 1986) (emphasis added).

Later, S. 1923 was added to H.R. 2211, 99th Cong. 2d Sess. (1986) and § 6 became § 108(a) with no changes made. Eventually the bill was sent to a committee of conference which reported to Congress what now appears as H.R. 5316, 99th Cong. 2d Sess. (1986). In this Conference Report, section 108(a) is slightly revised and appears as the § 302(c)(1) discussed in the previous section of this memorandum. While § 108(a) is similar to the present § 302(c)(1), the changes suggest that this section evolved into its final form only after having been brought to the attention of the conferees.

The Conference Report is presented in two parts. The first part recommends that the two houses of Congress adopt the proposed bill. This part is signed by all of the "managers", that is, by all the members of the Conference Committee. The second part, the Explanatory Statement discussed previously, directly follows the recommendation. The Explanatory Statement is also signed by all of the managers.

Both congressional houses adopted the law and accompanying Explanatory Statement as proposed by the Conference Committee. Although our elected officials engaged in considerable floor debate over the Conference Report, no one referred to § 302(c). *See* 132 Cong.Rec. H8999 to H9002 (daily ed. Oct. 2, 1986); 132 Cong.

Rec. S15074 to S15094 (daily ed. Oct. 3, 1986). However, the Explanatory Statement unquestionably indicates that the conferees understood that a debtor could convert to Chapter 12. Moreover, the public remarks made just prior to the bill's passage, most of which addressed the compelling need to provide immediate relief for farmers, were spoken by the same congressmen who served on the Conference Committee. *See id.* We can only conclude that the person who drafted § 302(c)(1) did not write the portion of the Explanatory Statement which has created so much confusion.

*Ambiguity of § 302(c)(1)*

We are faced with a bill passed by Congress and its inconsistent explanation provided by the Conference Committee. Throughout a long series of cases, the Supreme Court has held that "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, Jr., concurring). However, where the statutory language is clear and unambiguous on its face, we cannot look to legislative history as a guide to its meaning. *Ex parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949). The necessity of an ambiguity is further explained by the legal commentaries:

> A statute is open to construction only where the language used therein requires interpretation or may be reasonably considered ambiguous. Thus, where no ambiguity appears, it has been presumed conclusively that the clear and explicit terms of a statute express the legislative intention. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity.

73 Am.Jur.2d *Statutes* § 194 (1974) (footnotes omitted).

Movants urge us to find an ambiguity in the language of § 302(c)(1). For a defini-

tion of ambiguity we again turn to the legal commentaries:

Ambiguity has been defined as doubtfulness, doubleness of meaning, or indistinctness or uncertainty of meaning of an expression used in a written instrument. In this respect, it has been declared that the courts may not find ambiguity in statutory language which laymen are readily able to comprehend, and that it is not permissible to create an obscurity in a statute to be cleared up by construction. Rules of interpretation are resorted to for the purpose of resolving an ambiguity, not for the purpose of creating it. However, use may be made by the courts of aids to the construction of the meaning of words used in a statute, even where, on superficial examination, the meaning of the words seem clear. An ambiguity justifying the interpretation of a statute is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined. The courts regard an ambiguity to exist where the legislature has enacted two or more provisions or statutes which appear to be inconsistent. There is also authority for the rule that uncertainty as to the meaning of a statute may arise from the fact that giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature.

73 Am.Jur.2d *Statutes* § 195 (1974) (footnotes omitted).

Some of the movants suggest that § 302(c)(1) has at least two rational interpretations when read together with the Family Farmer Act's amendments to § 1112(d).[6] In essence, the movants argue that the prepositional phrase "before the effective date of this Act" contained in § 302(c)(1) could function as an adverb modifying either the verb phrase "shall not apply" or the participle "commenced." The proposed alternative interpretations read as follows:

1. The amendments ... shall not apply ... to [title 11 cases] commenced ... before [the Family Farmer Act's effective date].

2. The amendments ... shall not apply ... before [the Family Farmer Act's effective date] ... to [title 11 cases].

Under the first interpretation, cases filed before November 26, 1986, could not be the beneficiaries of the Family Farmer Act. Accordingly, conversion to Chapter 12 would be prohibited. In other words, the drafters did not intend that the amendments made by subtitle B of title II apply retroactively to cases filed before November 26, 1986.

Under the second interpretation, the movants argue that the amendments made by subtitle B of title II will not apply to bankruptcy cases until after November 26, 1986:

Under interpretation 2, however, the 1986 amendments could apply to cases commenced under title 11, including Chapter 11 bankruptcy proceedings commenced by family farmers, but would not apply to any proceedings had in such cases before the effective date of the Act. The amendments could be applied prospectively to a case commenced under title 11 before the Act's effective date, if conversion from Chapter 11 proceedings to Chapter 12 proceedings were permitted by the court pursuant to § 1112(d). As of the date of conversion to Chapter 12 proceedings, the Act would become effective and applicable to such cases.

Memorandum of Frederick M. Baker, Jr., to David J. Anderson, Esq., January 22, 1987, submitted as an attachment to the brief of Anderson & Stull, P.C.

---

6. 11 U.S.C. § 1112(d) reads as follows:

(d) The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under section 1141(d) of this title; and

(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

*Decisions in other Bankruptcy Jurisdictions*

To date several bankruptcy courts have issued opinions on the issue before us. Four courts have held in favor of conversion, while conversion has been denied in ten cases, two of which were decided by the same judge. We review these decisions in this instance, not because they represent binding precedent on this court, but because we respect the collective wisdom of so many bankruptcy judges faced with the same problem.

The first case to hold in favor of conversion is *In re Erickson Partnership*, 68 B.R. 819 (Bankr.D.S.D.1987). Judge Ecker was swayed by the discussions in the Senate that indicated both the failure of the present system and the advantages of the proposed Chapter 12. While he does not discuss the problem of sentence structure, he does determine that Congress made a mistake in placing the amendments to Chapters 7, 11, and 13 within subtitle B. He criticizes the Family Farmer Act by saying that "[t]he apparent misplacement of the amendments to section 1112(d) and section 1307(d) defeats the obvious intent of Congress and produces an absurd result in creating two classes of family farmers in distress: one class in economic and Bankruptcy Code distress, and the second, merely in economic distress." *Id.* at 826. Judge Ecker allowed conversion since he felt no party's rights were prejudiced.

In *In re Big Dry Angus Ranch, Inc.*, 69 B.R. 695 (Bankr.D.Mont.1987) the court allowed conversion because it felt that the language in the Explanatory Statement was strong enough to justify deviation from the statute itself. This court also refers to the congressional discussions regarding the need for financial relief for farmers and the fact that the Bankruptcy Code was not addressing their plight. The same reasoning was followed by the court in *In re Henderson*, 69 B.R. 982 (Bankr.N.D.Ala.1987) which concluded that "[i]t is inconceivable to the Court, that Congress intended to discriminate against farmers who were forced into bankruptcy prior to

the effective date of Pub.L. 99–554." In the fourth case to grant conversion, *In re Mason*, 70 B.R. 753 (Bankr.W.D.N.Y.1987), the court again holds for the debtor on the basis that although the statute is unambiguous, the Explanatory Statement indicates that the intent of Congress was to allow conversion.

Meanwhile, nine other courts have denied conversion. In *In re Tomlin Farms, Inc.*, 68 B.R. 41 (Bankr.D.N.D.1986) the court explains its holding as follows: "Because section 302(c)(1) is clear and unequivocable on its face, this court will not resort to the statement of Committee Conference [sic] to supplant the meaning of the section itself or create ambiguity as to its meaning." *Id.*, at 43. The court in *In re B.A.V., Inc.*, 68 B.R. 411 (Bankr.D.Colo.1986) simply asserts, "There is no ambiguity in the statute." *Id.*, at 413. Regarding the conflicting Explanatory Statement, the court explains: "The Conference Report, however, is not the law, and the Court need not attempt to divine what prompted the Conference Committee to issue the report in the manner in which it was issued." *Id.* And in *In re Groth*, 69 B.R. 90 (Bankr.D.Minn.1987) the court again finds no ambiguity even though no objection was made to the conversion motion.

The Court in *In re Albertson*, 68 B.R. 1017 (Bankr.W.D.Mo.1987) addresses some of the arguments made in the briefs before us and says, "This Court wishes it could be convinced that such an application was reasonable, grammatical or proper. It can find none of the above." *Id.*, at 1020. After analogizing the plight of the debtor to the "victims" of the "white slavery" laws in *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917), the court continues:

> Every aspect of this new legislation cries out that conversion was intended, except for the words it was couched in. The Court perceives that it must apply the words, not the intent, for to do otherwise would mean that the Court had usurped the function of the legislative body.

*In re Albertson,* 68 B.R. at 1021. The court in *In re Petty,* 69 B.R. 412 (Bankr.N. D.Ala.1987) announces that it "is not prepared to abandon a logical interpretation of the unambiguous language of § 302(c)(1) in favor of the committee comments which implicitly contradicts [sic] the plain meaning of the statute."

In *In re Barclay,* 69 B.R. 552 (Bankr.C. D.Ill.1987), and its virtually identical companion case *In re Lindsey,* 69 B.R. 632 (Bankr.C.D.Ill.1987), the judge concludes that "the statutory language is clear and unambiguous. Therefore, there is no need to refer to legislative history." In *In re Glazier,* 69 B.R. 666 (Bankr.W.D.Okla. 1987) we read, "The court has found no ambiguity in § 302(c)(1) of the Family Farmer Act and concludes that any ambiguity which may exist has been created by the language of the Committee Report and not by the language of the statute." The court reasons in *In re Hughes,* 70 B.R. 66 (Bankr.W.D.Va.1987) that "[t]o give effect to the Conference Report, and to ignore the clear mandate of § 302(c)(1), would be to rewrite the Act, not to interpret it." Finally, a different approach was taken by the court in *In re Ray,* 70 B.R. 431 (Bankr.E. D.Mo.1987) which held that "because permitting conversion of a Chapter 11 case to Chapter 12 threatens to violate the Fifth Amendment by diminishing pre-existing rights of secured creditors, the constitutional question also can and should be avoided by denying motions to convert."

*Plain Meaning of § 302(c)(1)*

Significantly, in *none* of the fourteen decisions on the conversion issue facing us, including those granting conversion, has a judge found an ambiguity within the language of the statute. Perhaps the movants are correct in detecting a minor flaw in the statute's sentence structure. However, the construction they advocate is

meaningless. To argue that the provisions of Chapter 12 do not take effect prior to the effective date of the Family Farmer Act is obvious since § 302(a) already states when the amendments take effect. Section 302(c)(1) sets forth no new "effective date."

The movants' alternative interpretation of § 302(c)(1) is a *non sequitur* and therefore cannot reasonably be considered more than a technical ambiguity. Congress need not have included an additional § 302(c)(1) which means exactly what § 302(a) already says. Furthermore, we agree with one of the respondents that if the movants correctly interpreted § 302(c)(1), then Congress had absolutely no reason to place the words "with respect to cases commenced under title 11 of the United States Code" within that subsection. The "amendments made by subtitle B" can only apply to cases commenced under the Bankruptcy Code. If Congress truly meant this, they simply would have said that "the amendments made by subtitle B of title II shall not apply before the effective date of this Act." A common axiom of statutory interpretation is that a statute should be construed to give meaning to all of its provisions:

> [A] construction of one part or provision of a statute which renders another part redundant or superfluous should be rejected; all parts of a statute should, if possible, be given effect.

*Jarecki v. GD Searle & Co.,* 367 U.S. 303, 307–308, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). As a general statement, we wholeheartedly endorse strict adherence to the rules of grammar in statutory construction and elsewhere.[7] Nonetheless, we are compelled to adopt interpretation 1, the plain meaning of § 302(c)(1), as its only reasonable meaning. *See* Collier Special Supplement, "The Bankruptcy Judges, U.S. Trustees, and Family Farmer Act of 1986," page C–8 (Matthew Bender, 1986).

---

**7.** Although we recognize that the ambiguity suggested by the movants is only tenuous at best, neither are we prepared to adopt the histrionic attitude of Judge Koger who stated:

> If "before" modifies "effective date" rather than "cases commenced under Article II [sic] of the United States Code" not only were the

efforts of this Judge's past English teachers (who in that distant past forced diagramming and parsing of sentences ad infinitum, ad nauseum) wasted, but their earthly remains would take on gyroscopic manifestations.

*In re Albertson,* 68 B.R. 1017, 1020 (Bankr.W.D. Mo.1987).

We might add that some of the movants contend that the plain meaning of § 302(c)(1) does not create an exception to the general effective date provisions of § 302(a) as the drafters intended. Specifically the movants allege the following:

Under [interpretation 1] of § 302(c)(1), the amendments would not be prevented from "taking effect 30 days after the date of the enactment of this Act." Rather, they would merely be rendered *inapplicable* to any case commenced under title 11 before the general effective date of the Act provided by § 302(a).

By contrast, interpretation 2 would create an *exception* to the general effective date prescribed by § 302(a). Rather than becoming effective on the general effective date specified by § 302(a), the amendments relating to family farmers would become effective, as to cases commenced before the general effective date of the Act, only *after* the Bankruptcy Court permitted conversion from, for an example, Chapter 11 proceedings to Chapter 12 proceedings. Thus, for cases commenced before the general effective date of the Act, a different effective date for the amendments would be prescribed by § 302(c)(1): The date on which conversion from Chapter 11 to Chapter 12 proceedings was permitted by order of the Bankruptcy Court would be the effective date of the amendments as to such petition.

Memorandum of Frederick M. Baker, Jr., to David J. Anderson, Esq., January 22, 1987, submitted as an attachment to the brief of Anderson & Stull, P.C. (emphasis in original). We are not convinced that the drafters intended that subsection (c)(1) necessarily creates an exception to the general effective date. Rather, subsection (c)(1) by its terms determines which cases may qualify for conversion to Chapter 12 under the Family Farmer Act. By contrast, when Congress intended to alter the effective date, Congress explicitly demonstrated that it knew how to do so. For example, subsection (b) of § 302 provides:

(b) Amendments Relating to Bankruptcy Judges and Incumbent United States Trustees.—Subtitle A of title I, and sections 301 and 307(a), *shall take effect on the date of the enactment of this Act.* (emphasis added). Here, the emphasized language indicates a deliberate decision by Congress to make these amendments effective on October 27, 1986, as opposed to the general effective date of November 26, 1986.

### Use of the Explanatory Statement

Having determined that the technical ambiguity suggested by the movants is insufficient to send us searching the legislative history for Congress' intent, what deference do we give the conflicting Explanatory Statement? First we turn to the legal commentaries for a summary of the limitations of legislative history:

The meaning of a statute is not conclusively established by legislative history. Moreover, the legislative history of a statute may not compel a construction at variance with its plain words, and where the language of a statute is unambiguous, consideration of the history of the legislation is not permissible. Although it has been declared that the legislative history of an act becomes important only in extremely doubtful matters of interpretation, there is also authority to the effect that in order to effectuate the legislative purpose of a statute it is proper to consider, in addition to the literal words of the statute, the historical setting which gave impetus to its enactment.

73 Am.Jur.2d *Statutes* § 151 (1974) (footnotes omitted). We are aware that the Supreme Court has on occasion looked behind the letter of the law to legislative history in order to fulfill the legislature's purpose for a statute. *See generally In re Albertson*, 68 B.R. 1017 (Bankr.W.D.Mo. 1987).

Those favoring conversion would have us believe that it was always the intent of Congress to rewrite § 302(c). We are not convinced that this is so. A historical parallel to our situation exists with the implementation of the Bankruptcy Reform Act

of 1978. The 1978 Act made long-overdue improvements to the 1898 Bankruptcy Act and subsequently enacted Rules. However, in spite of its concern for debtors, Congress did not make the expanded relief under the Bankruptcy Code available to bankrupts in pending cases. *See, e.g., Central Trust Co. v. Official Creditors' Committee (In re Geiger)*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982) (an Act debtor could not dismiss and refile under the Code); *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (lien avoidance statute not intended to be applied retroactively).

Even with the protection to creditors afforded by the admonition in the Explanatory Statement that courts exercise their sound discretion in each case by allowing conversions only where it is equitable to do so, Congress had good reason to prefer a cut-off date. One of the constitutional purposes of federal bankruptcy laws is to assure the existence of uniform bankruptcy laws throughout the United States. But in this controversial field any semblance of uniformity could be destroyed by those judges who will allow conversion in all cases and those who would allow it in none. Congress may have been attempting to address the problem of forum shopping that "sound discretion" can create and to ensure that substantive rights do not depend on the "luck of the draw." Ironically, the split in decisions discussed earlier suggests Congress has failed in its endeavor.

While we could continue to speculate over Congress' policy reasons for enacting § 302(c)(1), we cannot, however, help but question the problems inherent with the use of congressional reports as a substitute for the plain meaning of the law. On this point Judge (now Justice) Scalia's concurring opinion in *Hirschey v. F.E.R.C.*, 777 F.2d 1 (D.C.Cir.1985) is enlightening:

> But the authoritative, as opposed to the persuasive, weight of the Report depends entirely upon how reasonable it is to assume that that rejection was reflected in the law which Congress adopted. I frankly doubt that it is ever reasonable to assume that the details, as opposed to the broad outlines of purpose, set forth in a committee report come to the attention of, much less are approved by, the house which enacts the committee's bill. And I think it time for courts to become concerned about the fact that routine deference to the detail of committee reports, and the predictable expansion in that detail which routine deference has produced, are converting a system of judicial construction into a system of committee-staff prescription.

*Id.*, at 7–8.[8] *See also Credithrift of America v. Auvenshine (In re Auvenshine)*, 9

---

[8]. For its insight into the legislative process, we cannot resist setting forth the following footnote from *Hirschey:*

> Several years ago, the following illuminating exchange occurred between members of the Senate, in the course of floor debate on a tax bill:
>
> Mr. ARMSTRONG.... My question, which may take [the chairman of the Committee on Finance] by surprise, is this: Is it the intention of the chairman that the Internal Revenue Service and the Tax Court and other courts take guidance as to the intention of Congress from the committee report which accompanies this bill?
>
> Mr. DOLE. I would certainly hope so....
>
> Mr. ARMSTRONG. Mr. President, will the Senator tell me whether or not he wrote the committee report?
>
> Mr. DOLE. Did I write the committee report?
>
> Mr. ARMSTRONG. Yes.

> Mr. DOLE. No; the Senator from Kansas did not write the committee report.
>
> Mr. ARMSTRONG. Did any Senator write the committee report?
>
> Mr. DOLE. I have to check.
>
> Mr. ARMSTRONG. Does the Senator know of any Senator who wrote the committee report?
>
> Mr. DOLE. I might be able to identify one, but I would have to search. I was here all during the time it was written, I might say, and worked carefully with the staff as they worked....
>
> Mr. ARMSTRONG. Mr. President, has the Senator from Kansas, the chairman of the Finance Committee, read the committee report in its entirety?
>
> Mr. DOLE. I am working on it. It is not a bestseller, but I am working on it.
>
> Mr. ARMSTRONG. Mr. President did members of the Finance Committee vote on the committee report?

B.R. 772, 775 (Bankr.W.D.Mich.1981) (statement in congressional report not controlling). We recognize that a conference report represents the final statement of terms agreed to by both houses of Congress and is, next to the statute itself, the most persuasive evidence of congressional intent. Nonetheless, in the absence of ambiguity, the statute must speak for itself. *See* 2A Sutherland Stat.Constr. § 48.08 (4th ed. 1984 and Supp.).

## CONCLUSION

This year our nation celebrates the bicentennial of a constitution which established a separation of powers between the three major branches of government. That system of checks and balances has served our country well. We cannot say why Congress elected to prohibit conversion for pending cases. Nevertheless, we must "draw the line" at the plain language of the statute. This court must devote its attention to tasks more important than second-guessing Congress' word. The Supreme Court, in one of its most recent decisions dealing with statutory interpretation, speaks for us:

> "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." ... Nor is the judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result.... On the contrary, deference to the supremacy of the legislature, as well as recognition that congressmen typically vote on the language of a bill, generally require us to assume that "the legislative purpose is expressed by the ordinary meaning of the words used." ... "Going

behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances."

*United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) (citations omitted). We are simply unwilling to take that step.

We find that § 302(c)(1) is clear and unambiguous and, regardless of whether we agree with it, we are compelled to abide by it. If Congress did indeed speak erroneously, we are content to allow Congress to rectify its mistake through a technical amendment. We do not have the jurisdiction to grant the conversions as prayed.

For these reasons, the motion to convert to Chapter 12 is denied in each case.

---

Mr. DOLE. No.
Mr. ARMSTRONG. Mr. President, the reason I raise the issue is not perhaps apparent on the surface, and let me just state it: .... The report itself is not considered by the Committee on Finance. It was not subject to amendment by the Committee on Finance. It is not subject to amendment now by the Senate.
....
... If there were matter within this report which was disagreed to by the Senator from Colorado or even by a majority of all Sena-

tors, there would be no way for us to change the report. I could not offer an amendment tonight to amend the committee report.
... [F]or any jurist, administrator, bureaucrat, tax practitioner, or others who might chance upon the written record of this proceeding, let me just make the point that this is not the law, it was not voted on, it is not subject to amendment, and we should discipline ourselves to the task of expressing congressional intent in the statute.
*Id.,* at 7–8, fn. 1.