**In the Matter of Ralph Leroy CARNAHAN and Jacqueline Sue Carnahan, Debtors.**

**Bankruptcy No. 85–10152.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

July 23, 1987.

Roland W. Gariepy, Fort Wayne, Ind., for debtors.

Mark T. Dykstra, Derald Kruse, Auburn, Ind., Thomas P. Yoder, David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for creditors.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

The matter is before the court on a motion filed by debtors-in-possession, Ralph Leroy Carnahan and Jacqueline Sue Carnahan ("debtors") to convert their pending chapter 11 reorganization to a proceeding under chapter 12 of the Bankruptcy Code. At the hearing on April 8, 1987, debtors and those creditors present[1] agreed no stipulation or oral testimony was necessary. They further agreed to file briefs in support of their respective positions. After the briefing period passed, this motion was taken under advisement on June 16, 1987.[2]

■ Debtors filed their voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code on March 8, 1985. Since then, debtors and Credit Union have filed plans of reorganization and supporting disclosure statements. This court has approved both of the disclosure statements.

Objections to both of the plans were taken under advisement. On June 26, 1987, this court denied confirmation of debtors' Plan of Reorganization and set a hearing on the confirmation of Credit Union's plan. There have also been numerous other proceedings in this case, including motions for relief from stay, applications for super priority lien status, and adequate protection orders. Now, two years into the reorganization, debtors wish to convert to a chapter 12 proceeding.

FDIC, Credit Union and John Deere maintain that cases pending under the Bankruptcy Code before the effective date of the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554 ("the Act") may not be converted to a case under the new chapter 12, relying upon section 302(c)(1) of Title III—Transition and Administration Provisions, Pub.L. No. 99–554.

Debtors contend conversion is allowed pursuant to 11 U.S.C. § 1112(d) and in support, cite the following cases which have allowed conversion: *In re Erickson Partnership*, 68 B.R. 819 (Bankr.D.S.D.1987); *In re Big Dry Argus Ranch, Inc.*, 69 B.R. 695 (Bankr.D.Mont.1987); *In re Henderson*, 69 B.R. 982 (Bankr.N.D.Ala. 1987); *In re Mason*, 70 B.R. 753 (Bankr.W. D.N.Y.1987).

Section 256 of the Act amended 11 U.S.C. § 1112(d) to allow conversion from a chapter 11 to a chapter 12. The amended section 1112(d) provides:

> The court may convert a case under this chapter to a case under 12 or 13 of this title only if—
>
> (1) the debtor requests such conversion;
>
> (2) the debtor has not been discharged under section 1141(d) of this title; and
>
> (3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

Debtor therefore argues it is equitable, in this case, to grant conversion.

---

**1.** Creditors represented by counsel at the hearing were Custer Grain Company, Federal Deposit Insurance Corporation ("FDIC"), and Community Credit Corporation.

**2.** Objections to the motion and supporting briefs were filed by FDIC, John Deere Company ("John Deere"), and DeKalb County Farm Bureau Cooperation Association Credit Union, Inc. ("Credit Union").

However, section 302(c)(1) of the Act states:

The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of the Act.

The effective date of the Act was November 26, 1986. As subtitle B of title II includes § 256, the section which amended § 1112 to permit conversion from chapter 11 to chapter 12, the statutory framework clearly envisions no conversions to chapter 12 of chapter 11 (or any other chapter) cases which were filed prior to November 26, 1986.

The majority of courts that have considered this conversion issue have also applied the clear Congressional directive set forth in section 302(c)(1) and have denied conversion. *See, In re Albertson*, 68 B.R. 1017 (BankR.W.D.Mo.1987); *In re Barclay*, 69 B.R. 552 (Bankr.C.D.Ill.1987); *In re Council*, 70 B.R. 20 (Bankr.W.D.Tenn. 1987); *In re Evans*, 72 B.R. 21 (Bankr.D. Ore.1987); *In re Glazier*, 69 B.R. 666 (Bankr.W.D.Okla.1987); *In re Groth*, 69 B.R. 90 (Bankr.D.Minn.1987); *In re Hughes*, 70 B.R. 66 (Bankr.W.D.Va.1987); *In re Keinath Brothers Dairy Farm*, 71 B.R. 993 (Bankr.E.D.Mi.1987); *In re Lindsey*, 69 B.R. 632 (Bankr.C.D.Ill.1987); *In re Petty*, 69 B.R. 412 (Bankr.N.D.Ala.1987); *In re Rossman*, 70 B.R. 985 (Bankr.W.D. Mi.1987); *In re B.A.V. Inc.*, 68 B.R. 411 (Bankr.D.Colo.1986); *In re Tomlin Farms, Inc.*, 68 B.R. 41 (Bankr.D.N.D.1986).

The cases cited by debtor are the minority of courts which allowed conversion, notwithstanding the clear language of section 302(c)(1), based primarily upon the Joint Explanatory Statement of the committee of Conference. This conference statement reads as follows:

### APPLICABILITY OF CHAPTER 12 TO PENDING CHAPTER 11 AND 13 CASES

It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.

Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

H.R. Conf. Rept. No. 958, 99th Cong., 2d Sess. 48–49 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin. News 5246, 5249.

The minority of courts believed this statement, together with the discussion of facts to be considered in allowing conversion, expresses a legislative intent to permit conversion even in pending cases.

Hence, the issue before this court is whether the plain language of the statute controls over the contradictory legislative history which distinctly expresses an intention that pending Chapter 11 and Chapter 13 cases may be converted to Chapter 12.

The answer involves an analysis of principles of statutory interpretation and the role therein of legislative history. There are an abundance of Supreme Court pronouncements which can be cited for any theory of statutory construction: the plain meaning rule,[3] or that legislative intent controls over statutory construction. Further, there have been numerous bankrupt-

---

**3.** *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1960) holding there is no need to resort to legislative history where the provisions of a statute are clear and unequivocal on their face; *Caminetti v. United States*, 242 U.S. 470, 490, 37 S.Ct. 192, 196, 61 L.Ed. 442

cy court decisions expounding on the impact of the legislative history on the language of section 302(c). This court concludes another opinion on this subject would be a considerable waste of judicial time and effort. Suffice it to say, we concur with the majority of the bankruptcy courts in holding that section 302(c)(1) unambiguously directs no conversion of cases pending on November 26, 1986 to a chapter 12 case. We further hold that we will not stray from the plain words of the statute towards arguably contrary language in the legislative history.

■■■ This holding does not state this court's intention never to consider legislative history in the application of a statute. Situations may arise when it is necessary to resort to legislative history. Where the words of a statute are ambiguous, a court may properly consult the legislative history. *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 492, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). Likewise, determining congressional intent is proper when the literal words of the statute would bring about results contrary to the purpose of the statute, *United States v. Public Utilities Comm.*, 345 U.S. 295, 315, 73 S.Ct. 706, 717, 97 L.Ed. 1020 (1953), or literal application of the statute would produce results at odds with the intentions of the drafters. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

In this situation, we see no reason to deviate from the unambiguous language of section 302(c)(1).

Accordingly, the motion to convert this chapter 11 case to a case under chapter 12 is denied.

SO ORDERED.

(1917) where the Supreme Court invoked the plain meaning rule stating that it is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms.

For Supreme Court authority on exceptions to the plain meaning rule, *see*, infra.