**In re Chesley I. WILLIS, Debtor.**

**Bankruptcy No. 86–70261–VAL.**

United States Bankruptcy Court,
M.D. Georgia,
Valdosta Division.

Oct. 1, 1987.

Ronnie Joe Lane, Donalsonville, Ga., for debtor.

MEMORANDUM OPINION ON MOTION TO CONVERT CHAPTER 11 CASE TO A CASE UNDER CHAPTER 12

ROBERT F. HERSHNER, Jr., Chief Judge, and JOHN T. LANEY, III, Bankruptcy Judge.

The primary issue in this case is whether this Court may convert a Chapter 11 case pending on November 26, 1986, the effective date of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, to a case under Chapter 12 of the Bankruptcy Code. The case was filed October 7, 1986 to prevent a pending foreclosure by The Federal Land Bank of Columbia (hereinafter Land Bank) of the Debtor's real property. The Debtors filed a motion to convert the case on June 26, 1987.[1] The Land Bank filed an objection to the motion to convert. The motion was heard *en banc* on August 24, 1987 by both Bankruptcy Judges for this District.[2]

---

1. An earlier motion to convert the case to Chapter 12 was filed by the Debtors on December 31, 1986 but was never served on the creditors. That motion came on for hearing January 14, 1987 and no one appeared. The Court, not realizing that the motion had not been served, dismissed it stating that it could not be converted. The Court was advised later that the Debtors and their attorney had not appeared at the hearing because the motion had not been served. The Court considers its order of February 27, 1987 as a dismissal without prejudice for lack of prosecution.

2. The issue is being decided *en banc* as was done in *In re Rossman*, 70 B.R. 985 (Br.W.D. Mich.1987) to avoid the possibility of different decisions on the issue being rendered in the same district. See *Rossman* at 986.

Mr. Willis is presently farming 243 acres in Worth County, Georgia. According to his schedules, he owns real and personal property valued at $185,370.00 and he has secured debts of $518,363.00, including $165,896.00 to the Land Bank, and unsecured debts of $23,342.62. He testified that he had farm income of $21,102.00 in 1985 and that in 1986 he "broke even." He made no payments to his secured creditors in either year. He has sold some equipment and has scaled down his farming operation now, but he has planted this year. He has also earned non-farm income in 1986 and this year of about $200.00 a week from a small engine repair business. No Plan of Reorganization or Disclosure Statement has been filed in this case.

The motion for conversion was made pursuant to Section 1112(d) of the Bankruptcy Code as amended by Title II, Subtitle B of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99-554, 100 Stat. 3088, 99th Cong., 2d Sess. (1986) (hereinafter "the Act").[3] The objection to conversion of Land Bank is based on Section 302(c)(1) of Title III of the Act. Section 302(c)(1) on its face clearly prohibits conversion to chapter 12 of any case filed before the effective date of the Act.

The Debtor, however, asserts that there is a conflict between Section 302(c) of the Act and 11 U.S.C. Section 1112(d), as well as between Section 302 and the Joint Explanatory Statement of the Committee of Conference, H.R. Conference Report No. 958, 99th Cong.2d Sess., United States Code Congressional and Administrative News (1986), p. 5246 (hereinafter "Explanatory Statement" and "Conference Committee"). He argues that Section 1112(d) by itself permits conversion of pending cases and that section therefore is an implied exception to the general limitations of Section 302(c). The Debtor states that congressional intent as stated in the Explanatory Statement is clear, that Section 1112(d) as a more specific provision takes precedence over Section 302(c), and that therefore conversion to a chapter 12 should be permitted. He also presents arguments that the language of the Act leads to the absurd result of creating two classes of family farmers and because of that the Court should look behind the wording of Section 302(c). Many bankruptcy courts have already issued opinions on the issue before us. The majority of these courts have held that a case pending under chapter 11 or 13 of the United States Bankruptcy Code on or before November 26, 1986 may not be converted to a case under chapter 12 of the Bankruptcy Code. *See, e.g., In re Litteral*, 74 B.R. 14 (Br.W.D.La. 1987); *In re McDonald*, 72 B.R. 227 (Br.D. S.C.1987); *In re Rossman*, 70 B.R. 985 (Br.W.D.Mich.1987); *In re Glazier*, 69 B.R. 666 (Br.W.D.Okla.1987); *In re Petty*, 69 B.R. 412 (Br.N.D.Ala.1987); *In re Albertson*, 68 B.R. 1017 (Br.W.D.Mo.1987); *In re B.A.V., Inc.*, 68 B.R. 411 (Br.D.Colo., 1986); and *In re Tomlin Farms, Inc.*, 68 B.R. 41 (Br.D.N.D., 1986). Other bankruptcy courts have held in favor of conversion. *See, e.g., In re Cobb*, 76 B.R. 557, 16 B.C.D. 200 (Br.N.D.Miss.1987); *In re Mason*, 70 B.R. 753 (Br.W.D.N.Y.1987); *In re Henderson*, 69 B.R. 982 (Br.N.D.Ala.1987); *In re Big Dry Angus Ranch, Inc.*, 69 B.R. 695 (Br.D.Mont.1987); and *In re Erickson*, 68 B.R. 819 (Br.D.S.D.1987), aff'd 74 B.R. 670 (D.S.D.1987) (the first reported case to allow conversion).

This Court believes that the cases not allowing conversion of chapter 11 cases pending on November 26, 1986 to chapter 12 are correct. We agree in particular with the detailed findings in *Rossman* that Section 302(c)(1) is clear and unambiguous and that courts should not go behind the plain language of the statute. We find no conflict between Section 1112(d) of Title II, as amended by Section 256 of the Act, and Section 302(c) of the Act. The language of

---

**3.** Section 1112(d) as amended provides that "(d) The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under section 1141(d) of this title; and

(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable."

Section 1112(d) does not provide for the conversion of cases pending before November 26, 1986, and Section 302(c) does not except the conversion provisions from its restrictions on effectuating dates for the Act. Section 302(c) merely provides an implementation date for Title II of the Act, and the conversion provisions of Section 256 fall within Title II. Courts are to interpret the language of one section of the statute consistently with language of other sections of the statute and not so as to render the statute's terms inconsistent or meaningless. *Hughes Air Corp. v. Public Utilities Comm'n,* 644 F.2d 1334, 1338 (9th Cir.1981); *In re Barclay,* 69 B.R. 552, 553 (Br.C.D.Ill.1987).

We also will not interpret Section 302(c)'s obvious meaning so as to accord with the Explanatory Statement. The apparently conflicting commentary in the Explanatory Statement follows the heading "Applicability of Chapter 12 to Pending Chapter 11 and 13 Cases" and reads:

It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.

Chief among the facts the court should consider is whether there is a substantial likelihood of successful reorganization under chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law,

availability to convert to the new chapter should be limited.

The Explanatory Statement, however, is not the law. *In re Rossman* discusses the Explanatory Statement at length, and it concludes that, in the absence of ambiguity, the court should not look beyond the plain language of the statute to the conference report for an interpretation of Section 302(c)(1). *Rossman* at 987–88, 992–94. "[W]e cannot, however, help but question the problems inherent with the use of congressional reports as a substitute for the plain meaning of the law.... We recognize that a conference report represents the final statement of terms agreed to by both houses of Congress and is, next to the statute itself, the most persuasive evidence of congressional intent. Nonetheless, in the absence of ambiguity, the statute must speak for itself." *Id.* at 993–94. The statute is unambiguous and we will not search for congressional intent beyond the words of the statute itself.

This Court cannot find that its interpretation of the language of the statute leads to any absurd result that would require us to go beyond the plain language of the statute. Congress has created timing distinctions among debts before. The Bankruptcy Reform Act of 1978 included Section 403(a), which restricted the provisions of the new Bankruptcy Code to debtors filing after November 1, 1979. The United States Supreme Court held in *Central Trust Company v. Official Creditors' Comm.* that this creation of two classes of debtors did not invalidate the effective date of the statute. 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982). We find that Section 302(c)(1) of the Act is clear and unambiguous and that it prevents cases pending before the effective date of chapter 12 from being converted to cases under chapter 12. If this was not Congress's intent, then Congress must enact legislation to change the statute.[4]

This Court also believes that this debtor's case would not be a proper case for

---

4. On July 24, 1987, the Senate passed S. 548, the Retiree Benefits Security Act of 1987. Title II of S. 548 would permit the conversion to chapter 12 of chapter 11 and 13 cases which were com-

menced before November 26, 1986 and which are pending or reviewable. The companion House of Representatives bill, H.R. 1152, is still pending.

382

conversion, even if conversion were permitted by the statute. Section 1112(d) as amended provides that "The court may convert a case under this chapter to a case under chapter 12 ... of this title only if ... such conversion is equitable." The Explanatory Statement in its analysis of equitableness states that "Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12." The debtor has made no showing that he would be able to propose a feasible plan of reorganization under chapter 12. He has scheduled secured debts of $518,363.00 and unsecured debts of $23,342.62. He has made no payments to his creditors since 1984. He testified that he had farm income of only $21,102.00 in 1985 and that he "broke even" in 1986. His farming operation now is smaller than it was in 1986. He also testified that he did not know if he would have any net farm income in 1987 or 1988. His chapter 11 case has been pending for 11 months and no Plan of Reorganization or Disclosure Statement has been filed. The debtor has not met his burden of showing that he could propose a feasible chapter 12 plan. Conversion would not be equitable in this case.

For these reasons, the motion to convert this chapter 11 case to a chapter 12 is denied. An order will be entered in accordance with this Opinion.